F. Osborne Pfingst v. Commissioner.
Pfingst v. Commissioner
Docket No. 8441.
United States Tax Court
1947 Tax Ct. Memo LEXIS 266; 6 T.C.M. (CCH) 316; T.C.M. (RIA) 47072; March 26, 1947
Theodore B. Benson, Esq., 817 Southern Bldg., Washington 5, D.C., for the petitioner. D. D. Smith, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for the year 1941 in the amount of $27,445.83. *267 The only question is whether certain distributions which petitioner received in 1941 from the Greensboro Full-Fashioned Hosiery Mills, Inc., were taxable in full, either as dividends or as distributions in partial liquidation of the corporation. Petitioner treated the distributions in his return as long-term capital gain from distributions in complete liquidation of the corporation. Petitioner filed his return with the collector for the district of North Carolina. Findings of Fact Petitioner and Mary C. Pfingst were husband and wife during the taxable year 1941 and filed a joint return. They have since been divorced. Mary C. Pfingst refused to join in the present petition and the proceeding has been dismissed as to her. The Greensboro Full-Fashioned Hosiery Mills, Inc., a North Carolina corporation, was organized in 1927 to engage in the manufacture of hosiery. Petitioner and his father were among the original incorporators. In 1940 and 1941 petitioner was president of the corporation. The authorized capital stock of the corporation consisted of 2,500 shares of $100 par value preferred stock and 250 shares of no par value common stock. Petitioner and his father owned 50 *268 per cent of the corporate stock. The remaining 50 per cent was owned by Harry C. and George F. Aberle, and Carl B. Goldacker. The shareholders were as follows: Stockholder
Preferred
Common
George G. Pfingst
350
35
F. Osborne Pfingst
780
78
Harry C. Aberle
750
75
George F. Aberle
280
28
Carl B. Goldacker
100
10
Total
2,260
226
The 240 shares of unissued preferred stock and 24 shares of unissued common stock were carried on the books of the corporation as treasury stock. Petitioner's 780 shares of preferred stock cost him $100 a share and his 78 shares of common stock cost him $2 a share, or a total of $78,000 for the preferred stock and $156 for the common stock. The corporation declared and paid dividends on the preferred stock. No dividends were paid on the common stock. The directors of the corporation were petitioner and his father and the two Aberles. In 1940 the directors and shareholders decided to liquidate the corporation and go out of business. Petitioner and his father and the Aberles each engaged an attorney to represent them in the liquidation. A special meeting of the board of directors was held on June 24, 1940, for *269 the purpose of dissolving and liquidating the corporation as soon as possible thereafter. At that time the corporation had under consideration an offer to sell all of its manufacturing machinery and equipment to Owen Osborne, Inc. The other assets of the corporation were readily marketable. The minutes of the meeting recite, in part, the passage of the following resolutions relative to the dissolution of the corporation: RESOLVED, that this corporation liquidate its assets and wind up its affairs by sale of its assets to such persons or corporations at such prices and terms and at such times as the directors of the corporation may, in their discretion, determine to be to the best interests of the corporation and its shareholders; FURTHER RESOLVED, that the proper officers of this corporation be and they are hereby authorized to do any and all things which may be necessary or desirable to carry the foregoing resolution into effect. * * *
RESOLVED, that commencing immediately all manufacturing operations of the company shall cease except insofar as they may be necessary to complete inventory on hand, and that such manufacturing operations shall continue only until September 1, 1940 and *270 that no new styles shall be manufactured or offered for sale within such period. FURTHER RESOLVED, that commencing immediately no further purchases of merchandise for resale shall be made. * * *
RESOLVED, that liquidating dividends should be paid to the shareholders each time that the sum of Ten Thousand Dollars ($10,000.) or more had accumulated in the treasury as the result of liquidation of assets. * * *
The shareholders approved the decision to liquidate the corporation at a meeting held on June 24, 1940. As of May 31, 1940, according to the corporation's balance sheet, the assets, liabilities, capital, and surplus of the corporation were as follows: ASSETS
Current Assets
Cash
$ 45,814.39
Inventories
212,111.07
Accounts Receivable
76,518.75
Notes Receivable
4,766.00
Accrued Interest
58.77
Total Current Assets
$339,268.98
Other Assets
4,654.83
Deferred Charges
5,902.44
Fixed Assets
Land
$ 15,525.76
Factory Building
48,676.67
Factory Utilities
27,817.38
Machinery and Equipment
245,161.45
Factory Equipment
26,382.43
Office Equipment
5,291.25
$353,329.18
Less Depreciation Allowance
203,299.00
Total Fixed Assets
$165,555.94
Total Assets
$515,382.19
LIABILITIES
Total Liabilities
$ 23,502.05
CAPITAL
Capital Stock
$226,452.00
Earned Surplus
265,428.14
Total Liabilities and Capital
$515,382.19
*271 The machinery and equipment listed above, consisting of twenty-two hosiery machines with auxiliary equipment, were sold to Owen Osborne, Inc., under a conditional sales agreement dated July 22, 1940. The total purchase price was $125,000, $12,500 of which was paid in cash on the day of the sale. The balance of $112,500 was represented by 36 notes in the amount of $3,125 each payable monthly beginning on October 1, 1940. The conditional sales agreement also provided that title to the hosiery machines was to remain in the Greensboro Full-Fashioned Hosiery Mills, Inc., until the purchase price was fully paid, and that in the event of default the corporation could repossess the equipment with no right of further recovery from Owen Osborne, Inc. The sale of the machinery to Owen Osborne, Inc., was confirmed by the board of directors at a meeting held on July 22, 1940. The minutes of the meeting recite, in part: FURTHER RESOLVED, that the President of the company, Mr. Osborne Pfingst, should continue to sell currently at current market prices, the inventory of the company now on hand but that no large or bulk sales from said inventory at prices below the current market prices should *272 be made without the further order of the Board. Owen Osborne, Inc., paid a total of $50,000 on the purchase price of the machinery and then defaulted in the payment of the note due on October 1, 1941. Owen Osborne, Inc., notified the Greensboro Full-Fashioned Hosiery Mills, Inc., that no further payments would be made under the conditional sales agreement, and the corporation repossessed the twenty-two machines and equipment. Prior to December 15, 1941, eight of the twenty-two machines were sold to others for $33,500. The remaining fourteen machines were sold separately after 1941, the last being disposed of in May 1944. In accordance with the resolution to liquidate the corporation and to cease manufacturing operations except as to partially completed inventory, no purchase of silk or other material was made after September 1940, and no labor was employed after that month. The corporation sold its realty, buildings, and land on November 15, 1940, for $20,000. The goods in inventory were sold in the regular course of trade as finished goods. The last sales of hosiery were made in August 1941. No inventory was left after that time. As the machines, inventory, and other assets *273 were sold, the realized funds were distributed to the stockholders in accordance with the resolution to distribute such funds whenever the corporation accumulated the sum of $10,000 as the result of its liquidation. After the meeting of July 24, 1940, all the shareholders delivered their certificates in escrow to the two attorneys representing the Pfingsts and Aberles. As the funds were distributed to the shareholders, the attorneys endorsed on the back of each certificate the distributions made to the respective stockholders. Payments in cash to all stockholders and to petitioner in the years 1940 and 1941 were as follows: 1940
All Stockholders
Petitioner
August 13
$ 25,000.00
$ 8,628.33
September 23
35,000.00
12,079.56
October 11
25,000.00
8,628.33
November 5
35,000.00
12,079.56
November 18
50,000.00
17,256.65
December 16
50,000.00
17,256.65
$220,000.00
$75,929.08
1941
January 9
$ 50,000.00
$17,256.65
February 3
35,000.00
12,079.56
April 4
25,000.00
8,628.33
July 23
25,000.00
8,628.33
December 12
35,000.00
12,079.56
December 24
15,000.00
5,177.00
$185,000.00
$63,849.43
The consent of the stockholders to the dissolution *274 of the Greensboro Full-Fashioned Hosiery Mills, Inc., was filed with the Secretary of State of North Carolina on May 5, 1941, and the final certificate dissolving the corporation was issued on May 9, 1942, after certification by the State Commissioner of Internal Revenue that all taxes due North Carolina had been paid. The dissolution of the corporation was regular and in compliance with the North Carolina law. As of December 15, 1941, the only remaining unliquidated assets of the corporation were fourteen of the twenty-two machines which had been repossessed from Owen Osborne, Inc., cash on hand, and stock of the Robin Redbreast Hosiery Mills, Inc. At a meeting of the board of directors held on December 15, 1941, for the purpose of completely liquidating the corporation and winding up its affairs by the end of December 1941, the following resolution was passed: RESOLVED, that the liquidation of the assets, and the winding up of the business and affairs of this Company be completed in December 1941 and that its assets be distributed to its shareholders in complete liquidation of their shares of stock in this Company. BE IT FURTHER RESOLVED that certain machines and auxiliary *275 equipment * * * and 1697 shares of 5% First Preferred and 72 1/2 shares of 6% Second Preferred Stock of Robin Redbreast Hosiery Company, Inc., any and all cash on hand, in banks and in petty cash and any and all accounts, notes, and bills receivable and any and all assets of every sort and kind, real, personal and mixed, except the franchises and corporate name of the Corporation, shall forthwith be distributed to the shareholders in this Corporation, pro rata, in proportion to their respective holdings of share of the capital stock of this Corporation, in complete liquidation, and, to that end, that any and all property and assets of the Corporation (save only its corporate name and franchises), subject to all liabilities of the corporation shall forthwith be assigned, transferred and delivered (when actual delivery is possible) to F. Osborne Pfingst and Harry C. Aberie, the nominees of all of said shareholders. Pursuant to the resolution of December 15, 1941, all the remaining assets of the corporation were assigned and transferred to petitioner and Harry C. Aberle as nominee of the shareholders in complete liquidation of the corporation. As noted previously, the assets were disposed *276 of in later years, final distribution of cash to the individual shareholders being in 1944, at which time $16,102.50 was distributed to the stockholders, of which petitioner received $5,557.86. The stock certificates which were held in escrow by the attorneys for the Pfingsts and Aberles were returned to petitioner as president of the corporation in February 1942 and were pasted by petitioner in the stock certificate book. The corporation kept its books and filed its returns on the basis of a fiscal year ended November 30. The corporation filed an income tax return for the fiscal year ended November 30, 1941. The last and final income tax return of the corporation was filed for the one month period December 1 to December 31, 1941. The books of the corporation were closed as of December 31, 1941, and records of transactions thereafter on behalf of the nominee of the stockholders were kept in a check book. During the calendar year 1940, petitioner received the sum of $75,929.08 in distributions by the corporation. Petitioner treated the distributions as in complete liquidation of the corporation and applied the $75,929.08 to the $78,000 cost of his preferred stock, leaving a balance *277 under his computations of unrecovered cost in the amount of $2,070.92. In his return for 1940, petitioner reported no gain from the receipt of the $75,929.08 from the corporation. During the year 1941, petitioner received $63,849.43 as cash distributions from the corporation, from which he deducted the $2,070.92 unrecovered cost of the preferred stock and determined a gain on the preferred stock in the amount of $61,778.63. In addition petitioner determined that the value of his share of the physical assets transferred to himself and Aberle as nominees for the stockholders pursuant to the resolution of December 15, 1941, was $10,254.37, making a total of $72,033 received, under petitioner's computations, in excess of the cost of the preferred stock. From this $72,033 petitioner deducted the $156 cost of the common stock and reported the balance in his income tax return for 1941 as a long-term capital gain in the amount of $35,938.50, being 50 per cent of the total gain. Respondent eliminated from petitioner's taxable income for 1941 the $35,938.50 reported as capital gain and determined that petitioner received in 1941 total distributions from the Greensboro Full-Fashioned Hosiery *278 Mills, Inc., in the amount of $68,598.27, all of which were includible in ordinary income as dividends. The parties are agreed that total distributions from the corporation to petitioner in 1940 and 1941 were in excess of the cost of petitioner's preferred and common stock by $68,598.27. Petitioner did not report as income the $5,557.86 received in 1944 upon the disposal of assets held by the nominees of the stockholders since he determined that he had received such amount in kind in 1941 and had included it in his computations of long-term capital gain for that year. Opinion Respondent determined that the distributions which petitioner received in 1941 from the Greensboro Full-Fashioned Hosiery Mills, Inc., were taxable in full either as ordinary dividends under section 115(a) or as distributions in redemption of stock essentially equivalent to taxable dividends under section 115(g). In his brief, these contentions of the respondent that section 115(a) or section 115(g) apply are relegated to a secondary position, and the contentions on brief appear to be based on the novel argument that although the distributions in 1940 and 1941 were identical, those in the taxable year *279 1941 came from accumulated earnings or profits, while those in 1940 did not. Respondent's main contention now is that the distributions were parts of a series of distributions in complete cancellation or redemption of all of the corporation's stock in accordance with a plan of liquidation which contained no time limit within which it was to be completed, and that the distributions, therefore, are taxable as distributions in partial liquidation under section 115(c) and 115(i). [1] Respondent claims that the endorsements on the back of each certificate of the amounts distributed to the shareholders effected a cancellation or redemption of the stock, citing . But compare (decided Jan. 31, 1947).
*280 Petitioner, on the other hand, claims that the amounts in question were distributed in complete liquidation of the corporation within the meaning of section 115(c), and that they are, therefore, taxable to him as long-term rather than short-term capital gain. He argues that the distributions were made by the corporation in accordance with a bona fide plan of liquidation which envisaged completion within the three year limit specified in the statute, despite the absence of express words to that effect in the pertinent resolutions. No facts are in dispute. The parties are agreed that in 1940 the directors and shareholders of the corporation decided to completely liquidate the corporation and go out of business. They are also agreed that the amount in controversy is $68,598.27. This involves a recognition by respondent that the distribution of the remaining assets in kind on December 15, 1941, to the nominees of the stockholders, represented a distribution to the stockholders for which petitioner was taxable on his pro rata share. The transfer of the corporate property under the liquidation thus was completed by the end of 1941. This was within the three year time limit specified *281 in section 115(c) and the only question is whether there was a bona fide plan of liquidation incorporating such time limitation. It is not contended that there was a plan specifying a certain date prior to which the distribution should be completed, but petitioner's contention is, in substance, that it was the expectation and plan under all the circumstances to complete the distribution as soon as possible, at least by the time Owen Osborne, Inc., would have paid off its notes, and that such a plan is in compliance with the statute. In , it was recognized that formal corporate resolutions may not set forth with completeness the plan for liquidating a corporation. It was there held that acts of the directors and stockholders might be considered to dispel any doubt as to whether the corporate resolutions provide for immediate liquidation, and where the testimony clearly showed that the plan in fact required that the liquidation be carried out immediately, failure to incorporate all the details of the plan in the corporate resolutions was not fatal. The Roach case has been subsequently followed in several memorandum opinions, the facts of which *282 do not materially differ from the facts at bar. See also (promulgated Feb. 28, 1947). In the instant case, there was a bona fide intention in 1940 to liquidate the corporation and go out of business as soon as possible. The assets were readily marketable and all of the corporation's manufacturing machinery and equipment, at the time the resolution to dissolve was adopted, was about to be sold under a contract providing for complete payment within three years. The corporation ceased all manufacturing operations after September 1940. Its land and buildings were sold in November 1940, and its inventory was continuously offered for sale at current market prices and finally disposed of by August 1941. By the end of 1941, all machinery had been sold except fourteen machines. Respondent recognizes that these machines made up a distribution of property to the stockholders pursuant to the resolution of December 15, 1941. Thus, the facts are that the corporation liquidated all of its assets by the end of 1941, about a year and a half after the plan to liquidate was adopted. The facts and circumstances compel the conclusion that the requirements *283 of section 115(c) were met. The time limit provision in section 115(c) was designed to encourage corporations which wanted to liquidate to do so within a short period, so that distributions would not actually be spread out over many years with resulting tax benefits to the stockholders as compared to what the tax would have been if the distributions had been concentrated in a shorter period. . In the instant case as the assets were sold, it was not within the discretion of the directors to withhold distributions to the stockholders and space them out over periods of years. Instead, in accordance with the plan embodied in part in the resolutions, each time the sum of $10,000 was accumulated distributions had to be made. The stockholders were divided into two factions, each represented by a separate attorney. From the testimony and all the attendant circumstances, it is clear that the parties were conscious of the fact that the liquidation had to be made in accordance with a definite plan, and that it was to be consummated by the time Owen Osborne, Inc., paid for the machinery and equipment. It is held, therefore, that there *284 was a bona fide plan of liquidation under which the transfer of the property of the corporation was to be completed within the time specified in the plan, that is, within three years from the close of the taxable year 1940, and that the distributions in question were made in complete liquidation within the meaning of section 115(c). Petitioner's contention is sustained. Respondent's contention that the distributions were made in partial liquidation rather than in complete liquidation of the corporation is based solely on his claim that there did not exist a bona fide plan of complete liquidation specifying a three year time limit. Our holding to the contrary disposes of this contention, as well as his subsidiary contentions that the distributions were taxable as ordinary dividends or as distributions in redemption essentially equivalent to taxable dividends. See Regulations 103, section 19.115-9. Decision will be entered under Rule 50. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(c) Distributions in liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938. * * *
(i) Definition of partial liquidation. - As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.↩